■ In the Matter of the Estate of NICHOLAS MARSH, Also Known as NICHOLAS V. MARSH, Deceased. BANK OF NEW YORK, as Preliminary Executor of NICHOLAS V. MARSH, Deceased, Appellant; ADRIENNE M. LEFKOWITZ et al., Respondents.

Nicholas Marsh appointed his wife, Irene Marsh, and his daughter, Adrienne Lefkowitz, as executrices of his estate. The Bank of New York was designated as the successor executor. In a codicil to his will, he removed his wife as executrix, named Lefkowitz as the sole executrix and appointed the bank as the successor executor. Following Nicho-

las Marsh's death, a hearing was ultimately conducted in the Surrogate's Court to determine whether Lefkowitz's preliminary letters testamentary should be revoked and whether she was ineligible to be a permanent executrix and trustee under her father's will. The Surrogate decided that Lefkowitz's removal was warranted, and this court affirmed on the ground that the record supported a finding of improvidence and the wilful refusal to obey the court's direction *(Matter of Marsh,* 173 AD2d 336, *appeal dismissed* 78 NY2d 990). We also therein affirmed the appointment of The Bank of New York as permanent executor and trustee. In the meantime, Irene Marsh also died, and her will was offered for probate in Westchester County. The Surrogate issued preliminary letters testamentary to The Bank of New York, the nominated executor and trustee, and Lefkowitz interposed objections to the probate of the will. The law firm which had provided attorneys for Irene Marsh during her lifetime regarding the probate proceeding in Nicholas Marsh's Will was retained by the bank as its counsel in both estates.

By order to show cause dated August 8, 1990, The Bank of New York applied for a decree admitting Nicholas Marsh's Will and Codicil to probate and for letters testamentary and trusteeship. Lefkowitz opposed the bank's application and, in a cross-motion, sought extensive relief, including the disqualification of The Bank of New York from appointment as executor of Nicholas Marsh's Will and the prohibition of the subject law firm from acting as counsel to the bank and otherwise participating in the proceedings other than as witnesses. The bank objected to Lefkowitz's cross-motion, but the Surrogate, despite granting preliminary letters testamentary to the bank, ruled that a hearing should be held in relation to the eligibility of The Bank of New York to be made permanent executor and trustee and whether the law firm in question should be disqualified as the bank's attorneys in this probate proceeding. However, it was an abuse of discretion for the Surrogate to require a hearing under the circumstances herein. The Surrogate directed, and this court affirmed, that The Bank of New York be designated permanent executor and trustee, and the bank promptly complied with the mandates of SCPA 708, which deals with the qualification of fiduciaries. In addition, a proposed decree and counter-decree were submitted to the Surrogate's Court, and even the suggested counter-decree offered by Lefkowitz named The Bank of New York as the recipient of letters testamentary and trusteeship. Indeed, Lefkowitz failed to interpose any objection until the bank

applied by means of the order to show cause for the issuance of the letters after the Surrogate had not acted for some months on the decree or counter-decree. Yet, her papers do not allege any facts necessitating that the bank be declared ineligible pursuant to SCPA 707 and 711.

The law is established that a testator's selection of a fiduciary must be given great deference and that the Surrogate's power to refuse to grant letters is limited by statute (Matter of Flood, 236 NY 408; Matter of Leland, 219 NY 387). Thus, the grounds for the Surrogate declining to issue. letters are no broader than those specifically contained in SCPA 707 and 711. Where, as herein, the party in opposition has not provided any facts for declaring the bank ineligible under SCPA 707 and 711, no hearing is authorized, and the objections should have been summarily dismissed (see, Matter of Goulden, 41 AD2d 684). Further, a potential conflict of interest between a fiduciary and a party interested in the estate, or the executor thereof, as Lefkowitz claims to exist in the instant situation, does not warrant the denial of letters to, or removal of, a fiduciary (Matter of Juelich, 81 AD2d 919; Matter of Foss, 282 App Div 509). Rather, it is actual misconduct, not a conflict of interest, that justifies the removal of a fiduciary (Matter of Foss, supra). In any event, none of the purported conflicts of interest asserted by Lefkowitz, such as proper reimbursement by the fiduciary of one estate from the other estate and the possible enhancement of the assets of one estate over that of the other, raises any questions about the bank's eligibility since these issues can be resolved in an accounting. Similarly, Lefkowitz's claim that the fiduciary of Nicholas Marsh's estate should commence suit against the bank's attorneys appears to be founded upon nothing more than the previous litigation between her and Irene Marsh, who was also represented by the same law firm and which culminated in Lefkowitz's removal as preliminary executrix and her disqualification as permanent executrix and trustee of the estate of Nicholas Marsh. However, Lefkowitz's personal antipathy to the law firm scarcely presents a legally cognizable basis for disqualifying it from now serving as the bank's counsel and depriving the bank of the right to retain the attorney of its choice merely because of an adversary's claim of a potential conflict of interest (Rowe v DeJesus, 106 AD2d 284).

Finally, Lefkowitz's conclusory allegations of improvidence and misconduct by The Bank of New York do not state any grounds for denying issuance of the letters under SCPA 707

and 711. In effect, she contends that the bank's supposed willingness to give an estate guaranty to Bank Leumi, the lender for the family business, demonstrates improvidence. Considering that the bank had not yet obtained either preliminary or permanent letters in Nicholas Marsh's estate at the time that Lefkowitz made her accusation, her assertion in this respect is entirely frivolous. As for the claim that the bank is guilty of misconduct, SCPA 711 (2) simply refers to "other misconduct in the execution of his office" but the bank has thus far been unable to perform its office of executor or trustee, and SCPA 707 does not mention misconduct at all. Consequently, for all of the foregoing reasons, the Surrogate's Court improperly ordered that a hearing be held and should, instead, have granted the application by The Bank of New York for permanent letters testamentary and trusteeship. Concur—Murphy, P. J., Carro, Milonas and Kassal, JJ.