Matter of Bolen (2018 NY Slip Op 08001)





Matter of Bolen


2018 NY Slip Op 08001


Decided on November 21, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 21, 2018

526465

[*1]In the Matter of the Estate of ROBERT J. BOLEN JR., Deceased. MARGARET A. LIBERTI et al., Respondents; ROBERT J. BOLEN III et al., Appellants. (And Another Related Proceeding.)

Calendar Date: October 11, 2018

Before: McCarthy, J.P., Egan Jr., Lynch, Mulvey and Rumsey, JJ.


FitzGerald Morris Baker Firth, PC, Glens Falls (John D. Aspland Jr. of counsel), for appellants.
Brody & Brody LLP, Delmar (Mark D. Brody of counsel), for respondents.



MEMORANDUM AND ORDER
Mulvey, J.
Appeal from an order and decree of the Surrogate's Court of Warren County (Hall Jr., S.), entered May 16, 2017, which, among other things, granted letters of administration to petitioners.
Robert J. Bolen Jr. (hereinafter decedent) died testate on July 24, 2016, predeceased by his wife. He was survived by his daughter, petitioner Margaret A. Liberti, and his four sons, respondent Robert J. Bolen III, respondent Thomas R. Bolen, petitioner Hanz W. Bolen and Timothy Joseph Bolen. Decedent's last will and testament named his wife as the executor of his estate and provided that, in the event she predeceased him, respondents were to be appointed as coexecutors [FN1]. In September 2016, petitioners commenced this proceeding seeking probate of the [*2]will and letters of administration, alleging, among other things, that respondents were ineligible to receive letters testamentary due to a conflict of interest and breaches of fiduciary duties. Respondents filed objections and cross-petitioned for a decree of probate and issuance of letters testamentary to themselves. Surrogate's Court, without holding a hearing, dismissed respondents' application, granted petitioners' petition and issued letters of administration to them. Respondents appeal.
It is well settled that "a decedent's choice of executor should be given great deference and not disregarded unless that executor is not legally qualified to act as a fiduciary" (Matter of Palma, 40 AD3d 1157, 1158 [2007]; see Matter of Duke, 87 NY2d 465, 473 [1996]; Matter of Flood, 236 NY 408, 410 [1923]; Matter of King, 147 AD3d 1286, 1287 [2017]). Eligibility to receive letters testamentary is governed by SCPA 707, which, insofar as is relevant here, permits the denial of letters to "one who does not possess the qualifications required of a fiduciary by reason of substance abuse, dishonesty, improvidence, want of understanding, or who is otherwise unfit for the execution of the office" (SCPA 707 [1] [e]). The grounds for disqualification under SCPA 707 are exclusive, and the burden of proof falls upon the party alleging ineligibility (see Matter of Palma, 40 AD3d at 1158; Matter of Shephard, 249 AD2d 748, 749 [1998]; Matter of Krom, 86 AD2d 689, 690 [1982], lv dismissed 56 NY2d 807 [1982]). Because disqualification of a named executor is a "most serious" course of relief, it "may only be decreed when the grounds set forth in [SCPA 707] have been clearly established" (Matter of Duke, 87 NY2d at 473; accord Matter of Kaufman, 137 AD3d 1034, 1035 [2016], lv denied 28 NY3d 908 [2016]; Matter of Mercer, 119 AD3d 689, 691 [2014]).
Petitioners' application for letters of administration, as well as their objections to respondents' request for letters testamentary, is primarily grounded upon a claimed conflict of interest between respondents in their individual and representative capacities. It is undisputed that, prior to decedent's death, Robert J. Bolen III was appointed as a coguardian of decedent's person and property pursuant to Mental Hygiene Law article 81. Thereafter, a proceeding was commenced by Timothy Joseph Bolen, as coguardian of decedent's property, alleging that respondents had breached fiduciary duties owed to decedent and seeking, among other things, to set aside a conveyance of real property from decedent to Thomas R. Bolen and to direct repayment of certain insurance proceeds that "may be owed to [decedent]." Decedent died during the pendency of that application, as a result of which Surrogate's Court issued a letter informing the parties that it was "closing it's [sic] file in this matter." Petitioners thus argue that decedent's estate has causes of action against respondents and that, if appointed as coexecutors, respondents would be placed in a position where they would be obligated to pursue litigation against themselves individually.
Even accepting these allegations as true, the adversity of interest said to exist was not sufficient to nullify decedent's choice to appoint respondents as coexecutors. "'[I]t is actual misconduct, not a conflict of interest, that justifies the removal of a fiduciary'" (Matter of Morningstar, 21 AD3d 1285, 1287 [2005], quoting Matter of Shaw, 186 AD2d 809, 810 [1992]; see Matter of Marsh, 179 AD2d 578, 580 [1992]; Matter of Foss, 282 App Div 509, 513-514 [1953]; Matter of De Belardino, 77 Misc 2d 253, 255-256 [Sur Ct, Monroe County 1974], affd 47 AD2d 589 [1975]; Matter of Sandow, 21 Misc 2d 292, 292-293 [Sur Ct, NY County 1959]). [*3]Simply put, "a conflict does not make a fiduciary ineligible under SCPA 707, and public policy zealously protects the decedent's right to name a fiduciary, even one with a conflict" (Margaret Valentine Turano, Practice Commentaries, McKinney's Cons Laws of NY, Book 58A, SCPA 702 at 196). Thus, petitioners' remedy for the alleged conflict of interest lies not in the ineligibility provisions of SCPA 707, but in the provisions of SCPA 702 authorizing the issuance of limited and restricted letters of administration under certain enumerated circumstances.
To that end, SCPA 702 (9) specifically provides for the issuance of limited letters of administration to a party for the purpose of commencing "any action or proceeding against the fiduciary, in his or her individual capacity, or against anyone else against whom the fiduciary fails or refuses to bring such a proceeding." Indeed, this subdivision is designed to preserve a decedent's choice of fiduciary "by permitting the appointment of a second limited administrator instead of requiring the disqualification or removal of original fiduciaries where their conflicts of interests preclude them from pursuing claims against themselves or others to the prejudice of other persons interested in the estate" (Matter of Teah, 166 Misc 2d 976, 977 [Sur Ct, Bronx County 1996]; see Matter of Bennett, 84 AD3d 1365, 1366 [2011], lv denied 19 NY3d 801 [2012]; Margaret Valentine Turano, Practice Commentaries, McKinney's Cons Laws of NY, Book 58A, SCPA 702 at 196; 1 Harris, New York Estates: Probate, Administration and Litigation § 11:164 [6th ed]). For these reasons, we conclude that the conflict alleged did not render respondents ineligible to serve as fiduciaries of decedent's estate under SCPA 707.
To the extent that petitioners' application for letters of administration is premised on the alleged misconduct itself, we note that "not every breach of fiduciary duty warrants the corresponding removal of an executor" (Matter of Burkich, 12 AD3d 766, 768 [2004]; see Matter of Duke, 87 NY2d at 473). Further, and particularly relevant here, Surrogate's Court may disqualify a fiduciary without a hearing "only where the misconduct is established by undisputed facts or concessions, where the fiduciary's in-court conduct causes such facts to be within the court's knowledge or where facts warranting [disqualification] are presented to the court during a related evidentiary proceeding" (Matter of Duke, 87 NY2d at 472-473 [internal citations omitted]; see Matter of Kaufman, 137 AD3d at 1035; Matter of Mercer, 119 AD3d at 691). Here, the allegations of fiduciary misconduct and malfeasance have been sharply disputed by respondents, and not a scintilla of evidence was presented by petitioners in support of their claims. While petitioners argue that no hearing was necessary because Surrogate's Court, having previously presided over the Mental Hygiene Law article 81 guardianship proceeding, was personally familiar with the parties and the facts, there is nothing in this record to indicate that the court had independent knowledge of any statutory ground for disqualification. In fact, Surrogate's Court made no findings of fact or conclusions of law. While Surrogate's Court was not statutorily required to do so (see SCPA 505; Matter of De Belardino, 47 AD2d 589, 589 [1975]), under circumstances such as this, "with no evidence whatever, no reviewable record is presented, and it is clear that a hearing must be held at which evidence is taken" (Matter of Burns, 1 AD2d 505, 507 [1956]; see Matter of Duke, 87 NY2d at 475; Matter of Greenway, 241 AD2d 735, 736 [1997]; Matter of Farber, 98 AD2d 720, 720 [1983]; Matter of McDonald, 160 App Div 86, 87 [1914], affd 211 NY 272 [1914]). Accordingly, the matter must be remitted to Surrogate's Court for that purpose.
McCarthy, J.P., Egan Jr., Lynch and Rumsey, JJ., concur.
ORDERED that the order and decree is reversed, on the law, without costs, and matter remitted to the Surrogate's Court of Warren County for further proceedings not inconsistent with this Court's decision.



Footnotes

Footnote 1: The will further provided that, "if necessary, a determining vote on an issue will include [petitioners] and Timothy Joseph Bolen for majority vote as [e]xecutors on said [i]ssue." Petitioners' claim that this language renders respondents' nomination as coexecutors "conditional" in nature, and authorizes themselves and Timothy Joseph Bolen "to outvote [respondents] on any issue they find necessary" — including whether respondents may serve as coexecutors of decedent's estate — is without merit.