Matter of La Pava (2025 NY Slip Op 07302)

Matter of La Pava

2025 NY Slip Op 07302

Decided on December 24, 2025

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on December 24, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

VALERIE BRATHWAITE NELSON, J.P.
JANICE A. TAYLOR
LOURDES M. VENTURA
JAMES P. MCCORMACK, JJ.

2019-13047

[*1]In the Matter of Diane De La Pava, etc., deceased. Alfonso Rolli, et al., respondents; Brigid Trovato, appellant. (File No. 2725/15)

Metcalf & Metcalf, P.C., New York, NY (Steven Alan Metcalf II of counsel), for appellant.
Nobile, Magarian & DiSalvo, LLP, Bronxville, NY (Edward J. Mitchell of counsel), for respondents.

DECISION & ORDER
In related probate proceedings in which Alfonso Rolli petitioned, inter alia, to revoke letters testamentary and letters of trusteeship issued to Brigid Trovato, Brigid Trovato appeals from an order of the Surrogate's Court, Suffolk County (Theresa Whelan, S.), dated August 21, 2019. The order, insofar as appealed from, granted that branch of the motion of Alfonso Rolli and Anthony Trovato which was for summary judgment on that branch of Alfonso Rolli's petition which was pursuant to SCPA 711 to revoke letters testamentary and letters of trusteeship issued to Brigid Trovato to the extent of immediately suspending Brigid Trovato from serving as fiduciary pending the appointment of successor fiduciaries.
ORDERED that the order is affirmed insofar as appealed from, with costs.
The decedent died testate on May 14, 2015, and was survived by a minor son. The decedent's will devised the decedent's entire estate to her son in trust, with the exception of 50% of her residence, which was devised to her son's father, Alfonso Rolli. Pursuant to the decedent's will, the Surrogate's Court appointed the decedent's sister, Brigid Trovato (hereinafter the executor), as executor and testamentary trustee. Among the decedent's assets at the time of her death were a house located in Riverhead (hereinafter the Riverhead house) and a house located in White Plains (hereinafter the White Plains house).
Several disputes arose between Rolli and the executor. In September 2017, Rolli commenced a proceeding, inter alia, pursuant to SCPA 711 to revoke the letters testamentary and letters of trusteeship issued to the executor. In January 2018, the executor commenced a proceeding pursuant to SCPA 2103 against Rolli to discover property allegedly withheld from the decedent's estate. The executor also commenced a separate proceeding pursuant to SCPA 2103 against Anthony Trovato (hereinafter Anthony), the decedent's father. In June 2019, Rolli and Anthony moved for summary judgment on that branch of Rolli's petition which was pursuant to SCPA 711 to revoke the letters testamentary and letters of trusteeship issued to the executor and dismissing the executor's petitions pursuant to SCPA 2103 insofar as asserted against each of them. The executor opposed the motion. In an order dated August 21, 2019, the Surrogate's Court, among other things, [*2]granted that branch of the motion which was for summary judgment on that branch of Rolli's petition which was pursuant to SCPA 711 to revoke the letters testamentary and letters of trusteeship issued to the executor to the extent of immediately suspending the executor from serving as fiduciary pending the appointment of successor fiduciaries. The executor appeals.
Pursuant to SCPA 711, letters testamentary may be suspended or revoked where, inter alia, the fiduciary has wasted or improperly applied the assets of the estate or is unfit for the office by reason of other misconduct or want of understanding (see id. § 711[2], [8]). However, "[a] decedent's choice of executor should be given great deference" (Matter of Rothman, 183 AD3d 553, 554; see Matter of Shaw, 186 AD2d 809, 810). The removal of a fiduciary pursuant to SCPA 711 may only be decreed when the grounds set forth in the statute have been clearly established (see Matter of Duke, 87 NY2d 465, 473; Matter of Cozzoli, 224 AD3d 747, 749; Matter of Epstein, 202 AD3d 669, 671).
"'The Surrogate may remove [a fiduciary] without a hearing only where the misconduct is established by undisputed facts or concessions, where the fiduciary's in-court conduct causes such facts to be within the court's knowledge or where facts warranting amendment of letters are presented to the court during a related evidentiary proceeding'" (Matter of Cozzoli, 224 AD3d at 749, quoting Matter of Duke, 87 NY2d at 472-473; see Matter of Steward, 193 AD3d 940, 942). "[W]hile courts have the power to remove a fiduciary, that power is exercised sparingly and only where the record demonstrates a danger to the estate or trust if removal is denied" (Matter of Cozzoli, 224 AD3d at 749 [internal quotation marks omitted]; see Matter of Epstein, 202 AD3d at 671).
Here, it is undisputed that the executor lived in the White Plains house from November 2015 to April 2017, only paying the estate enough "rent" to cover the mortgage loan, insurance, and property taxes. Moreover, the executor allowed a nonparty to live in the White Plains house from January 2016 to September 2016 without paying rent to the estate, and the executor personally collected money from this nonparty. The executor's personal collection of rent generated by the estate was a violation of her fiduciary duty, which harmed the decedent's estate (see Cooper v Jones, 78 AD2d 423, 428; see also Matter of Steward, 193 AD3d at 943).
Generally, "mere friction between a trustee and a beneficiary is not sufficient ground for removal of a trustee, but, where that friction interferes with the proper administration of the trust, removal may be warranted" (Matter of Epstein, 202 AD3d at 674 [internal quotation marks removed]). Here, the hostility between Rolli and the executor is evident. Though Rolli is not a trust beneficiary, as the father of the decedent's son, he made requests for distributions from the trust toward the maintenance of the Riverhead house on the son's behalf, all of which were rejected by the executor. The executor's refusal to make any distribution requested by Rolli demonstrated that the animosity between them was thwarting the purpose of the trust (see id.).
Therefore, the Surrogate's Court providently exercised its discretion in granting that branch of the motion of Rolli and Anthony which was for summary judgment on that branch of Rolli's petition which was pursuant to SCPA 711 to revoke the letters testamentary and letters of trusteeship issued to the executor to the extent of immediately suspending the executor from serving as fiduciary pending the appointment of successor fiduciaries.
BRATHWAITE NELSON, J.P., TAYLOR, VENTURA and MCCORMACK, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court